# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# EL PASO DIVISION

| | | |
|---|---|---|
| MICHAEL LUTH, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | EP-09-CA-393-FM |
| | § | |
| PRAXAIR, INC., | § | |
| | § | |
| Defendant. | § | |

**ORDER DENYING WITHOUT PREJUDICE DEFENDANT PRAXAIR, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO RULE 12(b)(6) AND GRANTING PLAINTIFF LEAVE TO AMEND AMENDED COMPLAINT**

On this day, the Court considered Praxair, Inc.'s ("Defendant") "Defendant Praxair, Inc.'s Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Rule 12(b)(6)" and "Defendant Praxair, Inc.'s Memorandum in Support of Its Motion to Dismiss First Amended Complaint" [Rec. No. 16] (collectively, "Motion to Dismiss"), filed December 1, 2009; Michael Luth's ("Plaintiff") "Plaintiff's Response to Defendant Praxair's Motion to Dismiss Complaint Pursuant to Rule 12(b)(6)" ("Response") [Rec. No. 18], filed December 8, 2009; and "Defendant Praxair, Inc.'s Reply Memorandum in Support of Its Motion to Dismiss First Amended Complaint" ("Reply") [Rec. No. 21], filed December 18, 2009. Pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), Defendant requests the Court to dismiss "Plaintiff's First Amended Complaint" ("Amended Complaint") [Rec. No. 10], filed November 17, 2009, for failure to state a claim upon which relief may be granted. Based upon Plaintiff's Amended Complaint, the parties' briefs and argument, and the applicable law, the Court will deny without prejudice Defendant's Motion to Dismiss and grant Plaintiff leave to amend his Amended Complaint.

**I.     BACKGROUND**

On September 3, 2009, Plaintiff filed "Plaintiff's Original Petition" in State court. Defendant timely removed the action to federal court based upon diversity jurisdiction. Defendant filed its first motion to dismiss Plaintiff's Original Petition on November 6, 2009. Plaintiff filed his Amended

Complaint on November 17, 2009. On November 20, 2009, the Court denied Defendant's first motion to dismiss as moot [Rec. No. 13] because Defendant's motion to dismiss addressed only Plaintiff's Original Petition. Defendant then filed the Motion to Dismiss.

## II. LEGAL STANDARD

Rule 12(b)(6) permits a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted."[1] A "motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted."[2] The Court "construe[s] the complaint in the light most favorable to the plaintiff and draw[s] all reasonable inferences in the plaintiff's favor."[3]

A federal pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[4] "[T]he pleading standard [Federal] Rule [of Civil Procedure] 8 . . . demands more than an unadorned, the-defendant- unlawfully-harmed-me accusation."[5] A complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[6] "A plaintiff's obligation to provide the 'grounds' of [his] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[7] "'Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all

---

[1] FED. R. CIV. P. 12(b)(6).

[2] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982) (citation omitted).

[3] *Elsensohn v. St. Tammany Parish Sheriff's Office*, 530 F.3d 368, 371-72 (5th Cir. 2008) (citation omitted).

[4] FED. R. CIV. P. 8(a)(2).

[5] *Ashcroft v. Iqbal*, — U.S. —, —, 129 S. Ct. 1937, 1949 (2009) (citation omitted).

[6] *Id.*, 129 S. Ct. at 1949 (citation omitted).

[7] *Bell v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007) (citation omitted).

the allegations in the complaint are true (even if doubtful in fact).'"[8]

Accordingly, in order "[t]o survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[9] As the Supreme Court recently articulated, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[10] While this

> plausibility standard is not akin to a "probability requirement," . . . it [does] ask[] for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"[11]

"The task of the [C]ourt in ruling on a Rule 12(b)(6) motion 'is merely to assess the legal feasibility of the complaint, [and] not to assay the weight of the evidence which might be offered in support thereof.'"[12] The Court must accept well-pleaded allegations in a complaint as true, but it does not afford conclusory allegations similar treatment.[13] Nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation."[14] "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[15] "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."[16] The Court begins first by

---

[8] *Elsensohn*, 530 F.3d at 372 (citation omitted).

[9] *Id.* at 372 (citation omitted).

[10] *Iqbal*, — U.S. at —, 129 S. Ct. at 1949 (citation omitted).

[11] *Id.* at —, 129 S. Ct. at 1949 (citations omitted).

[12] *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998) (citation omitted).

[13] *See Kaiser Aluminum & Chem. Sales, Inc.*, 677 F.2d at 1050 (citation omitted).

[14] *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 2944 (1986) (citations omitted).

[15] *Iqbal*, — U.S. at —, 129 S. Ct. at 1949 (citation omitted).

[16] *Id.* at —, 129 S. Ct. at 1950.

identifying allegations in a complaint that are not entitled to the assumption of truth and then determines whether the remaining allegations "plausibly suggest an entitlement to relief."[17]

### III.  DISCUSSION

  *A.  Plaintiff's Negligence Claim*

  1.  Applicable Law

Plaintiff's allegations of negligence satisfy the federal pleading standard. Pursuant to Texas law, to set forth a negligence claim, a plaintiff must plausibly allege a legal duty, a breach of the legal duty, and damages proximately caused by the breach.[18]

Whether a defendant has a legal duty is the "threshold inquiry in a negligence case."[19] "[T]he existence of duty is a question of law for the court to decide from the facts surrounding the occurrence in question."[20] An "occupier has a duty to inspect the premises and warn of *concealed* hazards the [occupier] knows or should have known about."[21] An employee is an invitee.[22] Generally, an

> occupier does not owe a duty to ensure that independent contractors perform their work in a safe manner[, b]ut one who retains a right to control the contractor's work may be held liable for negligence in exercising that right. This right to control may be expressed by contract or implied by conduct.[23]

On the other hand, "[a]n independent contractor owes its own employees a nondelegable duty to provide them a safe place to work, safe equipment to work with, and warn them of potential hazards; it also

---

[17] *Id.* at —, 129 S. Ct. at 1951.

[18] *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004) (citation omitted).

[19] *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990) (citation omitted).

[20] *Id.* (citation omitted).

[21] *Gen. Elec. Co. v. Moritz*, 257 S.W.3d 211, 215 (Tex. 2008) (footnote with citations and internal quotation marks omitted).

[22] *Hernandez v. Heldenfels*, 374 S.W.2d 196, 197 (Tex. 1964).

[23] *Gen. Elec. Co.*, 257 S.W.3d at 214 (footnotes with citations omitted).

4

controls the details and methods of its own work, including the labor and equipment employed."[24]

To sufficiently allege proximate cause, a plaintiff must assert facts concerning cause-in-fact and foreseeability.[25] Accordingly, "[c]ause in fact is established when the act or omission was a substantial factor in bringing about the injuries, and without it, the harm would not have occurred."[26] "[C]ause in fact is not established where the defendant's negligence does no more than furnish a condition which makes the injuries possible."[27] That is, "the conduct of the defendant may be too attenuated from the resulting injuries to the plaintiff to be a substantial factor in bringing about the harm."[28] "Foreseeability exists when the actor as a person of ordinary intelligence should have anticipated the dangers his negligent act creates for others."[29] "These elements cannot be satisfied by mere conjecture, guess, or speculation."[30]

2. Analysis

Here, Plaintiff's allegations support the reasonable inference that Defendant owed Plaintiff a legal duty;[31] Defendant breached its alleged legal duty;[32] and Defendant's alleged breach of its legal duty

---

[24] *Id.* at 215 (footnotes with citations omitted).

[25] *Mason*, 143 S.W.3d at 798 (citation omitted).

[26] *Id.* at 799 (citations omitted).

[27] *See, e.g.*, *id.* (citations omitted).

[28] *Id.* (citations omitted).

[29] *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002) (citation and internal quotation marks omitted).

[30] *Mason*, 143 S.W.3d at 798-99 (citation omitted).

[31] Plaintiff alleges he was an employee of Northwest Insulation ("NI"), which Defendant contracted to perform work for it. Pl.'s Am Compl. at 2. Plaintiff alleges Defendant leased the premises at which Plaintiff suffered his injuries, making Defendant an occupier of the premises. *Id.* Plaintiff asserts Defendant directed and controlled NI, controlled the leased premises, and therefore had a legal duty to provide Plaintiff with a safe place to work as an invitee and a duty to inspect the premises and warn Plaintiff of any dangerous conditions. *Id.* In support of these allegations, Plaintiff further alleges he arrived for work at the leased premises on January 23, 2008, and was "cleared to work" by Defendant on the day he incurred his injuries; he began building a scaffold in the area he suffered his injuries; and after Plaintiff suffered his injuries, Defendant "brought safety personnel and other persons

5

proximately caused Plaintiff's damages.[33] When taking Plaintiff's allegations as true and construing them in a light most favorable to Plaintiff, it can reasonably be inferred that Plaintiff was an invitee, for whom Defendant had a legal duty to inspect the premises and warn Plaintiff of concealed hazards Defendant knew of or should have known about; Defendant breached its alleged legal duty to Plaintiff by failing to warn Plaintiff of the potential danger of the valve or otherwise eliminating the danger; and Defendant's failure to warn or inspect the premises proximately caused Plaintiff's injuries. Therefore, Defendant's Motion to Dismiss this claim will be denied.

  B.  *Plaintiff's Strict Products Liability Claim*

    1.  <u>Applicable Law</u>

Plaintiff's allegations of strict products liability do not satisfy the federal pleading standard. Texas law incorporates the strict products liability theory of section 402A of the Restatement (Second) of Torts ("Restatement 2d").[34] Section 402A provides in part:

> (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
>
>   (a) the seller is engaged in the business of selling such a product, and
>
>   (b) it is expected to and does reach the user or consumer without substantial

---

to the area of the incident who investigated, [and] took pictures . . . ." *Id.*

[32] Plaintiff, alleges "[b]oth the leased premises and the defective valve were under the control and direction of [Defendant] at all times material," and a valve "malfunctioned/broke" on the leased premised while he performed work, after which safety personnel and other persons "took physical possession of the defective valve and, upon information and belief, they still have it." *Id.* at 2. Plaintiff further alleges Defendant and its employees failed to warn Plaintiff of the allegedly defective valve. *Id.* at 2-3.

[33] Plaintiff alleges he was building a scaffold when he suffered his injuries, which placed him in the vicinity of the valve. *Id.* at 2. Plaintiff asserts he had no knowledge of the condition of the valve. *Id.* Plaintiff alleges when the valve "malfunctioned/broke" it "sen[t] a fissure of steam and liquid into the face, ear, and eye of Plaintiff, causing him to fall, resulting in multiple injuries to his body." *Id.* Plaintiff alleges he suffered bodily injuries to his body as a result of the occurrence, incurring medical expenses, nursing services and attention, and other expenses to treat the injuries he sustained as a result of the incident. *Id.* at 6.

[34] *See Caterpillar, Inc. v. Shears*, 911 S.W.2d 379, 381 (Tex. 1995).

change in the condition in which it is sold.[35]

To adequately plead a strict products liability claim, a plaintiff must allege

> (a) the product [is] defective; (b) the product reach[ed] the consumer [or user] without substantial change from the time it leaves the possession and control of the manufacturer or seller; (c) the defective condition of the product . . . render[s] the product unreasonably dangerous; and (d) the unreasonably dangerous condition of the product [is] the cause of the injury to the user.[36]

"The rule applies to any person engaged in the business of selling products for use or consumption,"[37] although section 402A does not apply to everyone who makes "an occasional sale."[38] Nonetheless, "a defendant does not have to actually sell the product; introducing the product into channels of commerce is enough,"[39] but "the product must reach the user or consumer without substantial change in the condition it left the manufacturer's or seller's possession."[40]

Section 402A applies even if "the user has not purchased the product or entered into any contractual arrangements with the seller,"[41] but "the product must be released in some manner to the consuming public."[42] The ultimate user or consumer "may be a member of the family of the final purchaser, or his employee . . . ."[43] Pursuant to section 402A, "'[c]onsumers' include not only those who in fact consume the product, but also those who prepare it for consumption . . . . Consumption includes

---

[35] RESTATEMENT (2D) OF TORTS § 402A(1).

[36] *Merrell v. Wal-Mart Stores, Inc.*, 276 S.W.3d 117, 124 (Tex. App. 2008) (citation omitted).

[37] *Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608, 613 (Tex. 1996) (citation omitted).

[38] *New Tex. Auto Auction Servs., L.P. v. Gomez De Hernandez*, 249 S.W.3d 400, 405 (Tex. 2008) (footnote with citations omitted).

[39] *Firestone Steel Prods. Co.*, 927 S.W.2d at 613 (citation omitted).

[40] *Id.* (citations omitted).

[41] *Armstrong Rubber Co. v. Urquidez*, 570 S.W.2d 374, 375-76 (Tex. 1978) (citation omitted).

[42] *Id.* at 376 (citation omitted).

[43] RESTATEMENT (2D) OF TORTS § 402A cmt. l.

all ultimate uses for which the product is intended . . . ."[44] Likewise, "'[u]ser' includes those who are passively enjoying the benefit of the product, . . . as well as those who are utilizing it for the purpose of doing work upon it, as in the case of an employee of the ultimate buyer who is making repairs upon the automobile which he has purchased."[45]

Under Texas law, "[t]he law of products liability does not guarantee that a product will be risk free, since most products have some risk associated with their use."[46] "A product may be unreasonably dangerous because of a defect in manufacturing, design, or marketing."[47] To establish a design defect, a plaintiff must show the defendant could have produced a reasonable, safer design, which could "be implemented without destroying the utility of the product."[48] "To determine whether a reasonable alternative design exists, and if so whether its omission renders the product unreasonably dangerous," numerous factors may be considered.[49] One factor includes "whether the product contains suitable warnings and instructions."[50] "To prevail in a design defect case, a plaintiff should be required to show that the safety benefits from its proposed design are foreseeably greater than the resulting costs, including any diminished usefulness or diminished safety."[51]

Chapter 82 of the Texas Civil Practice and Remedies Code mandates that a manufacturer shall

---

[44] *Id.*

[45] *Id.*

[46] *Caterpillar, Inc.*, 911 S.W.2d at 381.

[47] *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 335 (Tex. 1998) (citations omitted).

[48] *Id.* (citations omitted).

[49] *Id.* (citations omitted).

[50] *Id.* (citation omitted).

[51] *Id.* at 337 (citation omitted).

8

indemnify a seller against any loss arising out of a products liability action.[52] A products liability action includes any action against a manufacturer or seller for recovery of damages due to strict products liability or negligence.[53] The duty to indemnify applies regardless of the manner in which the products liability action is concluded and in addition to any other duty to indemnify.[54] Nonetheless, "chapter 82 was not intended to replace section 402A or the common law except in limited circumstances."[55]

    2.    Analysis

Plaintiff's allegations are insufficient to reasonably infer Defendant is liable under a strict products liability theory. While one may reasonably infer a product defect from Plaintiff's allegations,[56] Plaintiff has not alleged sufficient allegations to support a reasonable inference that Defendant is a manufacturer or seller; that Plaintiff was a consumer or user or there was otherwise any foreseeability of Plaintiff's injuries; that any alleged defect in the valve rendered the valve unreasonably dangerous; or that any unreasonably dangerous condition of the valve led to Plaintiff's injuries. The most Plaintiff alleges are conclusory allegations, which merely provide the legal framework, rather than the factual basis, for a strict products liability action. As Plaintiff requested leave to amend his Amended Complaint, however, the Court will allow him to do so.

## IV. CONCLUSION AND ORDERS

Plaintiff sufficiently alleges a negligence claim, but his allegations for his strict products liability claim do not support a reasonable inference of liability. As Plaintiff has requested leave to amend his

---

[52] TEX. CIV. PRAC. & REM. CODE ANN. § 82.002(a) (2005).

[53] *Id.* § 82.001(2).

[54] *Id.* § 82.002(e)(1)-(2).

[55] *New Tex. Auto Auction Servs., L.P.*, 249 S.W.3d at 405 (footnote with citation omitted).

[56] *See* Pl.'s Am. Compl. at 2.

9

Amended Complaint, however, the Court will allow him to do so in the interests of justice[57] and in conformity with the requirements set out in Rule 10. Accordingly, the Court enters the following orders:

1. "Defendant Praxair, Inc.'s Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Rule 12(b)(6)" [Rec. No. 16] is **DENIED WITHOUT PREJUDICE**.

2. Plaintiff has up to and including **February 4, 2010**, to amend his Amended Complaint in conformity with Federal Rule of Civil Procedure 10. Failure to timely amend the Amended Complaint **SHALL** result in **DISMISSAL** of Plaintiff's strict products liability claim without further notice to Plaintiff.

**SO ORDERED.**

**SIGNED** this **15th** day of **January, 2010**.

_____
**FRANK MONTALVO**
**UNITED STATES DISTRICT JUDGE**

---

[57] *See* FED. R. CIV. P. 15(a)(2) ("The [C]ourt should freely give leave [to amend] when justice so requires.").